## John W. Cornell *vs.* Mayor and Aldermen of New Bedford.

Bristol. Oct. 29, 1884. — Feb. 27, 1885.   C. Allen & Colburn, JJ., absent.

A petition that a way be laid out fifty feet wide in a city was presented to the board of mayor and aldermen; and the usual order of notice was issued and served. An order introduced in the board to lay out the way fifty feet wide was lost by a vote of three to three, and then "was laid on the table until the next meeting of the board." Three months later, the city surveyor was instructed to survey a way forty feet wide, and, on his return being made, the board adjudicated that public necessity and convenience required that the way be laid out forty feet wide, and gave due notice of an intention so to lay out the way. Subsequently a new order. laying out the way fifty feet wide, and giving the same metes and bounds as in the order first mentioned, was adopted by the board, concurred in by the common council, and approved by the mayor. *Held,* that the proceedings under the first order were not terminated by its being laid on the table, nor waived by the proceedings relating to the forty-foot way; and that a person whose land was taken by the location of fifty feet, but not by the location of forty feet, could not maintain a writ of certiorari to quash the proceedings laying out the way.

Petition for a writ of certiorari to quash proceedings of the respondent, in laying out an extension of Pleasant Street in New Bedford. Hearing before *Colburn,* J., who reserved the case for the consideration of the full court. The facts appear in the opinion.

*F. A. Milliken,* for the petitioner.

*T. M. Stetson & L. L. Holmes,* for the respondents.

Field, J. The questions submitted to us by the report are whether the common council of New Bedford should not also have been made a respondent; and whether "the power of the city authorities in respect of laying out the fifty-foot way was terminated when the vote of three to three was had, on

January 31, 1884, in respect of the passage of the order of that date, and by the subsequent notice and proceedings for a forty-foot way in May."

Assuming that the common council should have been made a respondent, (St. 1847, *c.* 60, § 12,) it may nevertheless be useful to consider the second question, because, if no error appears in the record, further proceedings in the case become unnecessary.

It appears that the report of the mayor and aldermen on the petition of Francis Hatheway and others, recommending that the way be laid out fifty feet wide, was received in the board of aldermen on January 3, 1884, and referred to the next city government. We infer that the next city government came in on the first Monday of January, 1884, (St. 1857, *c.* 2,) which was January 7. On January 17, 1884, the usual notice of an intention to lay out the way was given and served upon the petitioner. This notice recited that, in the opinion of the board, the safety and convenience of the inhabitants required that the way be laid out fifty feet wide.

On January 31, 1884, an order was introduced in the board of mayor and aldermen laying out the way fifty feet wide, and taking certain parcels of land therefor, and was lost by a vote of three to three, and thereupon, after a motion to amend the order so that the way should be forty feet wide instead of fifty, which was withdrawn, "the order was laid on the table until the next meeting of the board."

On May 8, 1884, the city land surveyor was instructed to survey a way forty feet wide, and his return of this survey was received at a special meeting of the board of mayor and aldermen, on May 15, 1884; and, at that meeting, the board of aldermen adjudicated that the public necessity and convenience of the inhabitants required that the way be laid out forty feet wide, and gave due notice to all persons interested that the board intended to lay out such a street. The way as surveyed, if forty feet wide, did not touch the land of the petitioner; if fifty feet wide, it included a part of his land. No order laying out the way forty feet wide, however, appears ever to have been introduced in the board of aldermen, or voted upon by that board; but, on June 4, 1884, a new order laying out the way fifty feet wide was introduced and adopted, was concurred in by the

common council, and approved by the mayor. This order did not differ from the order which, on January 31, 1884, " was laid on the table until the next meeting of the board," in the description of the metes and bounds of the way, or of the parcels of land taken.

The contention is, that, as the first order was defeated in the board of aldermen, and the vote was never reconsidered, the original proceedings were thereby terminated, certainly when the next meeting of the board of aldermen adjourned without having taken the order from the table; that the subsequent proceedings in regard to a forty-foot way also show that the laying out of a fifty-foot way had been abandoned; and that, in order afterward to lay out a way fifty feet wide, it was necessary to begin *de novo*, because the jurisdiction over the original petition of Hatheway and others was exhausted.

Whether the board of aldermen had adopted by vote any rules of procedure we do not know, as no rules appear; neither is there any evidence of the customary rules of the board. The function of the common council was to concur or non-concur in the orders of the board of aldermen. It is obvious that there might be differences of opinion between the two bodies; and that, until the subject was finally disposed of, the orders must be subject to amendment in the board of aldermen. The consideration of any order in the board of aldermen might be postponed from time to time until the final action of that board upon it, and whether that board has or has not taken final action upon an order must be determined by the intention of the board as shown by its record. *New Marlborough* v. *County Commissioners*, 9 Met. 423.

In the absence of any evidence that the board had adopted, either by custom or by vote, any special rules, it might perhaps be considered that it proceeded under what may be called the common parliamentary law. By that law, a motion to lay on the table, if carried, disposes of the motion to which it is applied for the time being; but this motion can be brought up for consideration by a motion to proceed with the consideration of the subject, or by a motion to reconsider. The order " was laid on the table until the next meeting of the board;" but, if not taken from the table at the next meeting, it was still on the table of

the board, and could be taken up for consideration, provided the order was not disposed of so that nothing remained to be considered, and then it could be taken up for the purpose of being reconsidered, if special rules did not forbid it. "When there is no special rule on the subject, a motion to reconsider may be made at any time, or by any member, precisely like any other motion, and subject to no other rules." Cushing's Law & Practice of Legislative Assemblies, §§ 1266, 1449, 1451. But, without applying too strictly to such a body as a board of aldermen the common parliamentary law of legislative assemblies, and interpreting its record by the construction which would be given to it by persons unskilled in parliamentary proceedings, we think it is clear that the order was laid upon the table until the next meeting of the board that the board might thereafter take some action upon it. The order had failed to pass, but, if it had been the intention to regard this as a final disposition of the order, no motion would have been carried to lay it upon the table, unless such a motion was, by the special rules of the board, a method of disposing of a subject so that it could not thereafter be reconsidered. As the order, when laid upon the table, had been voted upon and declared lost, the technical method of procedure would have been to move to take it from the table, and then to move to reconsider it. The resolve and order introduced and put upon their passage on June 4, 1884, were in effect a motion to take the original order from the table, to reconsider it, to amend it in certain particulars not material to this case, and, as thus amended, to pass it. As the subject was still open to consideration by the board, and the substance of what was done was within its power to do, its action cannot be declared void, because the manner of doing what it did was not in accordance with approved precedents. The petitioner has not been injured by the method of procedure.          *Petition dismissed.*